### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARIATI DEVELOPERS, INC., | Civil Action No. |
| Plaintiff, | 3:22-cv-0383 (CSH) |
| v. | |
| XPO LOGISTICS FREIGHT, INC., d/b/a XPO FREIGHT LINES; VZ UNITED, INC.; SOLVOJ, LLC; and KB XPRESS, CORP., | JULY 5, 2023 |
| Defendants. | |

**RULING ON DEFENDANT XPO FREIGHT'S MOTION TO DISMISS [Doc. 12] AND DEFENDANT SOLVOJ'S MOTION TO DISMISS [Doc. 22]**

**Haight, Senior District Judge:**

### I.  BACKGROUND

Plaintiff Cariati Developers, Inc. ("Cariati") commenced this action against XPO Logistics Freight, Inc. ("XPO Freight"), VZ United, Inc. ("VZ United"), Solvoj, LLC ("Solvoj"), and KB Xpress, Corp. ("KB Xpress") (collectively "Defendants"), relating to shipments of Cariati's goods from Connecticut to New York in 2020.  In its Complaint, Cariati has set forth two claims against all Defendants: negligence and violation of the Carmack Amendment, 49 U.S.C. § 14706, *et seq*.

In support of its claims, Cariati has alleged the following facts in its Complaint.  During the COVID-19 pandemic, the City of New York, through the New York City Department of Sanitation ("DSNY") and the City of New York Office of Emergency Management ("OEM"), created and expanded its Emergency Adult Food Access Program to "provide immediate assistance to New York

1

residents [who] were at risk of becoming, or . . . had already become, food insecure as a result of the COVID-19 pandemic's impact." Doc. 1 ("Complaint"), ¶¶ 13-14.  On April 9, 2020, Cariati entered into a contract with DSNY and OEM to provide prepared meal boxes to designated locations throughout New York (herein "Contract").  *Id.* ¶ 16.

Due to the "extreme and urgent need for meal boxes," the requirements under the Contract were expected to "ramp up" in volume as "more prepared meal boxes" would be required by DSNY and OEM.  *Id.* ¶ 17.  To fulfill the Contract, Cariati chose to engage subcontractors to assist in creating and delivering meal boxes to New York.  *Id.* ¶ 18.  Cariati thus entered a subcontract with XPO Logistics, LLC, to "arrange for the transportation of the prepared meal boxes from Plaintiff's site to the various designated sites throughout New York via motor carriers."  *Id.* ¶¶ 19-20.  As a result of that subcontract, XPO engaged motor carriers "XPO Freight Lines, VZ United, Solvoj, and KB Xpress to provide [these] delivery services." *Id.* ¶ 21.

Plaintiff "coordinated the preparation of the boxes and delivery dates to the DSNY and OEM designated sites" in New York, and "Defendants were to load, package, ship, and deliver the meal boxes" to those sites  from Plaintiff's warehouse in Connecticut. *Id.* ¶¶ 22- 23.  However, according to Cariati, "there were a number of issues with Defendants' performance and delivery of the meal boxes." *Id.* ¶ 24.  Throughout the Contract term (from April 13, 2020, to May 3, 2020), Defendants allegedly "failed to properly load, package, ship and deliver the meal boxes."  *Id.* ¶ 25.  Moreover, "[o]n multiple occasions, thousands of meal boxes . . . were damaged in transit and declared unusable by recipients DSNY and OEM."  *Id.* ¶ 26.  Certain deliveries were also "untimely, not within the designated time period, or delivered to the wrong location."  *Id.* ¶ 27.

As a result of Defendants' alleged negligent conduct, "DSNY and OEM terminated the

Contract with [Cariati], effective May 3, 2020." *Id.* ¶¶ 25-29.  Specifically, Cariati alleges that the Contract ended because "the majority of meal boxes Defendants delivered were damaged, smashed, or otherwise unusable, the deliveries were late, and the deliveries were not to all designated locations." *Id.* ¶¶ 25, 29.  Cariati further states that as a result of the Contract's termination, Cariati lost nearly $500,000 worth of food inventory, as well as expected future revenue and business under the Contract.[1]  *Id.* ¶¶ 32-35.

In its Complaint, Cariati has set forth two claims against the Defendant motor carriers:  (1) common law negligence and (2)  violation of the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C. § 14706.  In support of its claims, Plaintiff alleges that Defendants damaged the goods, boxed meals, in the course of interstate transit and/or delivered them late or to the wrong locations.  *See* Doc. 1 ("Complaint"), ¶¶ 22, 25-27, 37-43, 48-53.

Pending before the Court are two motions to dismiss: one by Defendant XPO Freight and the other by Defendant Solvoj.  Doc. 12, 22.   Each motion asserts that Plaintiff's negligence claim, set forth in Count One of its Complaint, "fail[s] to state a claim upon which relief can be granted," Fed. R. Civ. P 12(b)(6).  As XPO Freight summarizes, "[b]ecause this action consists of claims for alleged damage to goods during interstate transportation, any liability by [the Defendant motor carriers] is governed *exclusively* by the Carmack Amendment." Doc. 13, at 2 (emphasis in original).  Accordingly, Cariati's negligence claim against XPO Freight is statutorily "preempted . . . and must be dismissed." *Id.*  Similarly, in its "Motion to Dismiss," Solvoj asserts:  Cariati's "negligence cause of action . . . should be dismissed as to Solvoj because it is based upon Solvoj's liability as a motor

---

[1] According to Cariati, the DSNY had increased its demand for daily meal boxes from 3,000 to more than 10,000 during the Contract, and the food program at issue "continued beyond the termination of the Contract." Doc. 1, ¶ 33

carrier providing interstate transportation services, limiting Cariati's potential remedy against Solvoj to that set forth by the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C. § 14706." Doc. 22, at 1.  The Court resolves both motions to dismiss herein.

## II.  DISCUSSION

### A.  Standard of Review – Rule 12(b)(6), Fed. R. Civ. P.

A Rule 12(b)(6) motion to dismiss tests the adequacy of the complaint. *United States v. City of New York*, 359 F.3d 83, 88 (2d Cir. 2004).   "A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(6) when the pleadings fail to 'contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.[3]

In deciding a Rule 12(b)(6) motion to dismiss, the court must  "accept[ ] all factual allegations in the complaint as true and draw[ ] all reasonable inferences in favor of the plaintiff." *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (citing  *City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017)).   The complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal,* 556 U.S. at 678. "[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that

---

[2] Quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[3] The Second Circuit has adhered consistently to the United States Supreme Court's "plausibility" standard set forth in *Iqbal*. *See, e.g., Buon v. Spindler,* 65 F.4th 64, 76 (2d Cir. 2023); *Olson v. Major League Baseball,* 29 F.4th 59, 71 (2d Cir. 2022); *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020).

4

requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*   Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

A complaint challenged by a Rule 12(b)(6) motion must be construed liberally. *See Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009); *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  "A well-pleaded complaint will include facts that raise a right to relief above the speculative level." *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019) (citation and internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal,* 556 U.S. at 678).[4]

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal,* 556 U.S. at 678). *See also Amaker v. New York State Dep't of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same).  Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*,

---

[4] Additionally, a motion to dismiss under Rule 12(b)(6) "evaluates the sufficiency of the allegations of the complaint *without reference to extrinsic evidence*." *Offor v. Mercy Med. Ctr.*, No. 21-2115-CV, 2023 WL 2579040, at *1 (2d Cir. Mar. 21, 2023) (emphasis added).  Therefore, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and internal quotation marks omitted).  *See also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("In general, our review is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.") (citation omitted).

648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted). "Allegations are deemed 'conclusory' where they recite only the elements of the claim." *Arar v. Ashcroft*, 585 F.3d 559, 617 (2d Cir. 2009) (Parker, *J.*, dissenting).[5] "They become implausible when the court's commonsense credits far more likely inferences from the available facts." *Id.* (citing *Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009)).  In sum, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## B.  Carmack Amendment – Issue of Preemption

Defendants XPO Freight and Solvoj each move to dismiss Plaintiff's negligence cause of action on the grounds that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706, is the exclusive remedy for loss or damage to goods during interstate transport.  Doc. 13, at 3; Doc. 22, at 1.  As Solvoj notes, "[i]n 1913, the United States Supreme Court . . . established that the Carmack Amendment . . .   preempted state and common law remedies in cases involving damage to goods during interstate commerce." Doc. 22-1, at 6 (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505-06 (1913)).

By its enactment, the Carmack Amendment "superseded diverse state laws with a nationally uniform policy governing interstate carriers' liability for property loss." *New York, N.H. & H.R. Co. v. Nothnagle*, 346 U.S. 128, 131 (1953) (citing, *inter alia*, *Adams Express Co.*, 226 U.S. at 504-05). The amendment thus preempts state statutes and common law if they "in any way enlarge the responsibility of the carrier for loss or at all affect the ground of recovery, or the measure of recovery."  *Charleston & W.C. Ry. Co. v. Varnville Furniture Co.*, 237 U.S. 597, 603 (1915)

---

[5]  Dissent joined by Judges Calabresi, Pooler, and Sack.

(citation and internal quotation marks omitted). *See also Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001)("The Carmack Amendment . . . establish[ed] a single uniform regime for recovery by shippers directly from [the] interstate common carrier in whose care their [items] are damaged . . . and . . . preempt[ed][the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment.") (citations and internal quotation marks omitted). *See also generally* Ann K. Wooster, Annotation, "Preemption of State Law Under Carmack Amendment to Interstate Commerce Act, 49 U.S.C.A. § 14706, and Predecessor Statutes-Machinery Shipments," 194 A.L.R. Fed. 231 (2004) ("In 1913, the United States Supreme Court held that the Carmack Amendment superseded all the regulations and policies of a particular state on the same subject, and that there could be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it.").

The language of the Carmack Amendment provides:

> A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . . .

49 U.S.C.A. § 14706(a)(1). The Carmack Amendment thus "provides shippers with the statutory right to recover for the *actual loss* or injury to their property caused by any of the carriers involved in the shipment." *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir. 1994) (emphasis in original). As one commentator noted, "[s]ince the passage of the Carmack Amendment, the courts have almost universally construed it to preempt state tort actions, including punitive damages,

against interstate carriers arising from loss or damage to goods in transit and the processing of related claims." 194 A.L.R. Fed. 231.

## C. Analysis

### 1. Parties' Arguments

The material issue the Court must decide in resolving the present motions to dismiss is whether Plaintiff's negligence claim is preempted by the Carmack Amendment as a matter of law. Defendants XPO Freight and Solvoj assert that Cariati's negligence claim against them should be dismissed because, as XPO Freight emphasizes, the claim "seeks recovery for alleged loss and damage to Cariati's boxed meals that were shipped interstate – from Connecticut to New York," Doc. 13, at 3 (citing Complaint ¶ 39), which is "precisely the type of claim that is preempted by the Carmack Amendment," *id.* (collecting cases). Solvoj concurs, stating that "because it is based upon Solvoj's liability as a motor carrier providing interstate transportation services, . . . Solvoj's liability is governed exclusively by the Carmack Amendment." Doc. 22-1, at 1.  "Therefore, Count One of Cariati's Complaint fails to state a claim upon which relief may be granted . . . ." *Id.*

Plaintiff opposes dismissal of its negligence count, asserting that "various courts have recognized that claims 'separate and distinct from the delivery, loss of, or damage to goods' escape preemption." Doc. 21, at 8 (quoting *Koch v. McConnell Transp. Ltd.*, No. CV 13-3016 (LDW), 2015 WL 3470182, at *6 (E.D.N.Y. May 29, 2015)); Doc. 28, at 9 (same).  Cariati asserts that "Plaintiff has adequately pleaded an exception to the Carmack Amendment's preemption of state law claims because the harm Plaintiff alleges Solvoj caused by its repeated and recurrent conduct was separate and distinct from the damage to the goods transported." Doc. 28, at 9.  Additionally, "the resulting harm of Plaintiff's claim for negligence is separate and distinct from the damage to the

meal boxes Plaintiff placed in transit with XPO Freight Lines." Doc. 21, at 9.  The "separate" and "distinct" damage that Plaintiff alleges is the "los[s] [of] a business contract with the DSNY, as well as money spent on inventory to further perform the contract." *Id.*; Doc. 28, at 10.  According to Cariati, such damages "fall outside of the Carmack Amendment's preemptive purview given they do not directly relate to the damage [XPO Freight and Solvoj] caused to the meal boxes." Doc. 21, at 9, Doc. 28, at 10.  It was XPO Freight's and Solvoj's failure to "perform [their] carrier duties in a workmanlike manner which ultimately resulted in the contract [with the DSNY and OEM] being terminated." Doc. 21, at 9 (citation omitted); Doc. 28, at 10 (same).

In reply to Cariati's opposition, XPO Freight asserts that Cariati misinterprets the scope of the Carmack Amendment when it states that "alleged damages determines [sic] the scope of the preemption." Doc. 26, at 5.  Cariati seeks to recover "alleged damages for lost profits and inventory – claiming these damages are not damage to the goods during transit." *Id.* at 4.  However, the Carmack Amendment "is not based on the damages plaintiff seeks." *Id.*  The true issue is thus "whether the claim itself *arises out of* the loss of or damage to goods during interstate transit." *Id.* (emphasis in original).

Similarly, Solvoj states "Cariati's claims that DSNY and OEM terminated the contract with Cariati as a result of Solvoj's negligence, causing it to suffer monetary damages in the form of lost inventory, lost profits, and other monetary damages, flow directly from the damage to the goods shipped in interstate commerce."  Doc. 22-1, at 9.  "Therefore," argues Solvoj, "Cariati does not allege a cause of action separate and distinct from the damage caused by the interstate shipment of goods." *Id.*

### 2. *Application and Scope of Carmack Amendment*

As discussed above, the Carmack Amendment's purpose is to "establish[ ] a single uniform regime for recovery" by "provid[ing] interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability." *Project Hope*, 250 F.3d at 73 n.6. "The Second Circuit has . . . held that the Carmack Amendment fully occupies its particular field and thus completely preempts state common law." *Materazzi v. Atlas Van Lines, Inc.,* 180 F. Supp. 2d 408, 410 (E.D.N.Y. 2001) (citing *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233–34 (2d Cir.1978)). "Congress has created a broad, comprehensive scheme covering the interstate shipment of freight, aimed at preventing preferential treatment among shippers and establishing national equality of rates and services." *N. Am. Phillips Corp.*, 579 F.2d at 233-34. "This [scheme] has occupied the field to the *exclusion of state law*." *Id.* at 234 (collecting cases) (emphasis added). *See also Cleveland v. Beltman North American Co.*, 30 F.3d 373, 377–78 (2d Cir.1994) (reiterating the holding of *North American Phillips*).

 The preemptive effect of the Carmack Amendment on state law has been recognized for nearly a century. *Materazzi.*, 180 F. Supp. 2d at 410 (citing *Adams Express*, 226 U.S. 491). "[E]very circuit that has considered the issue has relied on the reasoning of *Adams Express* to conclude that the Carmack Amendment preempts a shipper's state common law claims of breach of contract and negligence." *Consol. Rail Corp. v. Primary Indus. Corp.*, 868 F. Supp. 566, 573–74 (S.D.N.Y. 1994) (collecting cases).

In *Adams Express Co. v. Croninger*, 226 U.S. 491, 507 (1913), the Supreme Court held that arguments that state common law could co-exist with the Carmack Amendment were  "untenable." To hold otherwise "would result in the nullification of the regulation of a national subject, and

operate to maintain the confusion of the diverse regulation which it was the purpose of Congress to . . . end." *Id.*

In reliance on *Adams Express*, district courts within this Circuit have held that the Amendment "completely preempt[s] state-law claims for damages and losses to property incurred in interstate shipping." *RDK NY Inc. v. City of New York*, No. 21-CV-1529(EK)(RER), 2023 WL 348467, at *3 (E.D.N.Y. Jan. 20, 2023) (citing *Shields v. United Van Lines*, No. 21-CV-1287 (SALM), 2021 WL 5832984, at *2–3 (D. Conn. Dec. 9, 2021) and collecting cases). *See also Aviva Trucking Special Lines v. Ashe*, 400 F. Supp. 3d 76, 79 (S.D.N.Y. 2019) ("The Carmack Amendment preempts all state law on the issue of interstate carrier liability.") (citing *Adams Express*, 226 U.S. at 505-06); *Sorrentino v. Allied Van Lines, Inc.*, No. 3:01-CV-01449(AHN), 2002 WL 32107610, at *2 (D. Conn. Mar. 22, 2002) ("[N]umerous district courts have held that the Carmack Amendments completely preempt state law claims for damages and losses incurred in interstate shipping of goods.") (collecting cases).

In fact, the Carmack Amendment is "comprehensive enough to embrace responsibility for *all losses* resulting from any failure to discharge a carrier's duty as to any part of the agreement transportation." *Shields*, 2021 WL 5832984, at *3 (quoting *Georgia, F. & A. Ry. Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916)) (emphasis added). District courts have thus dismissed claims for common law negligence, *Design X Mfg., Inc. v. ABF Freight Sys., Inc.*, 584 F. Supp. 2d 464, 467–68 (D. Conn. 2008), unfair and deceptive trade practices, *Taylor v. Mayflower Transit, Inc.*, 22 F. Supp. 2d 509, 511 (W.D.N.C. 1998), claims under the Connecticut Unfair Trade Practices Act ("CUTPA"), *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-CV-00209 (VLB), 2010 WL 918107, at *5 (D. Conn. Mar. 11, 2010), and negligent infliction of emotional distress, *Glass v. Crimmins*

*Transfer Co.*, 299 F. Supp. 2d 878, 887 (C.D. Ill. 2004). In each such case, the harm arose directly from the carrier's mishandling or mis-delivery of the property.

### 3. Plaintiff's Negligence Claim

In the case at bar, the alleged loss giving rise to a separate negligence claim consists of lost profits and inventory. If that claim is based on the Defendants' alleged mishandling and/or misdelivery (*i.e.*, loss of or damage to goods) during interstate transit, it is preempted.

Plaintiff Cariati points to cases such as *Koch v. McConnell Transp. Ltd.*, No. CV 13-3016 (LDW), 2015 WL 3470182, at *6 (E.D.N.Y. May 29, 2015), to argue that its negligence claim is "separate and distinct from the delivery, loss of, or damage to goods" and thus escapes preemption. Doc. 21, at 8-9. However, that case is clearly distinguishable from the instant case. In *Koch*, the Plaintiff was the administratrix of the estate of Curtis George Mains, Jr., a Home Depot employee who died unloading a truck filled with Christmas trees. Defendant Snokist, Ltd. ("Snokist"), a seller of such trees, had contracted with Defendant McConnell Transport Limited ("McConnell"), a trucking company, to deliver the trees to Home Depot in Commack, New York. Once the trees arrived in Commack, ICS, a third-party vendor hired by Snokist, was supposed to unload the trees. However, upon arrival of the trees at Home Depot, ICS failed to appear so Home Depot directed its own employees, including Mains, to unload the trees. In the interior of the McConnell truck trailer, "[t]here was visible snow and ice on the trees and the interior floor . . . all the way to the opening of the trailer's doors." 2015 WL 3470182, at *1. Mains "climbed into the trailer and began to unload the Christmas trees," and "while pulling a tree out of the trailer, hit his head on the pavement, and died of his injuries within 24 hours." *Id.*

Mains' administratrix sued McConnell for negligence, claiming that the trucking company

had negligently caused the injury and death of Decedent Mains.  McConnell moved for summary judgment on that claim, arguing, *inter alia*, that it was preempted by the Carmack Amendment. In ruling on the motion, the court recognized that "Carmack preempts a shipper's state and common law claims for breach of contract and negligence for goods lost or damaged when shipped through interstate commerce." *Id.* at *5 (collecting cases).  However, this negligence claim was "separate and distinct from the delivery, loss of, or damage to goods" so did not merit preemption. *Id.* at *6. "Here, Plaintiff claims Defendant[ ] negligently caused Decedent's death through the packing and unloading of the Christmas trees. This was not a claim that goods were damaged, or lost during transport." *Id.*  Moreover, it was "important to note that neither Plaintiff nor the Decedent was the shipper of goods that had a receipt or bill of lading with Defendant McConnell." *Id.* at *7.

Similarly, in *McGinn v. JB Hunt Transport, Inc.*, No. 10-CV-610 (JPS), 2012 WL 124401(E.D. Wis. Jan. 17, 2012), also cited by Cariati, Plaintiff Thomas McGinn sued for severe personal injuries he suffered when he attempted to unload merchandise from a truck trailer owned by the Defendant, trucking company JB Hunt Transport, Inc. ("JB Hunt").[6]  Co-defendant NYK Logistics ("NYK") had contracted with Target Corporation ("Target") to perform transloading services in California for the transport of gas grills to Target's distribution center in Oconomowoc, Wisconsin. On the bill of lading, Target was the designated shipper and JB Hunt was the trucking company in charge of domestic transport.

In May 2007, NYK loaded the grills onto JB Hunt's trailer and three days later, JB Hunt

---

[6] The Court notes that the *McGinn* case was decided by a district court in the Eastern District of Wisconsin in the Seventh Circuit so provides no binding authority. The Court, however, examines the case as potentially persuasive authority while addressing Cariati's arguments that its negligence claim is sufficiently  "separate and distinct" to escape Carmack preclusion.

delivered the grills to Target's distribution center in Wisconsin.  Two days following delivery, McGinn, a Target employee, was about to begin unloading the trailer when he noticed several wet cardboard boxes at the back of the trailer.   He and a fellow employee also noticed other irregularities in the delivery: there was "a hole in the trailer's roof and . . . one of the boxes [was] spilling out of the trailer onto the loading dock floor." 2012 WL 124401, at *2.  McGinn and his co-worker immediately contacted their supervisor. In assessing the feasibility of unloading the trailer, they initially "decided to unload the waterlogged product by hand, but later determined that using a forklift may be safer" by "allow[ing] the workers to stand further away." *Id.*   While McGinn's co-worker retrieved the forklift, McGinn moved an empty pallet from the loading dock area to the back of the trailer. As he moved the pallet, he had his back to the open trailer; and  some boxes fell from the trailer, "striking him on the back of the neck" and causing him grievous injury. *Id.*

McGinn sued JB Hunt, NYK and NYK's insurer for negligence, arguing that the boxes had fallen on him because of the negligent manner in which the defendants loaded and operated the trailer and the lack of proper trailer maintenance.   All three defendants moved for summary judgment, asserting that McGinn's common law negligence claims were preempted by the Carmack Amendment.  In denying the motions, the court held that alleged liability was based  on grounds that were "separate and distinct from the loss of, or damage to, goods that were shipped in interstate commerce." 2012 WL 124401, at *2.  The harm alleged was the "infliction of bodily injury."  *Id.* at *3. Moreover, "[s]upporting this finding, is the fact that the plaintiffs' potential measure of damages is not at all correlative to the loss or damage to the goods. *Indeed, it is not even clear that the goods involved in the accident were, in fact, damaged*." *Id.* (emphasis added).

14

McGinn's claim alleged "a separate, independently actionable harm" which did not stem from the loss of or damage to the goods. *Id.* In the *McGinn* court's opinion, the question was "whether the state law claim is really a claim for damages to the shipper's goods in disguise." *Id.* at *3. As in *Koch*, McGinn was neither the shipper, nor the carrier – rather he was an individual "seek[ing] to hold a carrier liable, not for damage or loss of the goods, but rather for personal injuries allegedly caused by the carrier's negligence in the transport of those goods." *Id.* at *2.

In the case at bar, Plaintiff Cariati was the shipper and XPO Freight and Solvoj were carriers of the goods in interstate commerce within the meaning of the Carmack Amendment, 49 U.S.C. §14706. No party has disputed these facts. Moreover, all damages allegedly flowed from the harm to or misdelivery of the mealboxes at issue. The fact that Plaintiff claims it "lost a business contract with the DSNY, as well as money spent on inventory to further perform the contract," was allegedly due to the same "negligence and failure [of XPO Freight] to perform its [carrier] duties in a workmanlike manner." Doc. 21, at 9. In addition,"[i]t was Solvoj's repeated and continuous breach of the duty it owed to Plaintiff to perform its carrier services in a workmanlike manner which ultimately resulted in the contract being terminated." Doc. 28, at 10. The negligence claim is essentially a claim for damages or loss of the goods in disguise.

As in *Design X Manufacturing, Inc. v. ABF Freight Systems, Inc.*, 584 F. Supp. 20d at 467, the state law claims are preempted by the Carmack Amendment because "[t]he alleged loss to business and reputation flowed directly from the damage to the goods shipped in interstate commerce . . . ."[7] Consequently, although Plaintiff attempts to characterize its "claims as alleging

---

[7] *See Design X Mfg., Inc.*, 584 F. Supp. 2d at 468 (granting summary judgment in favor of ABF Freight with respect to Design X's claims under CUTPA and for common law negligence and breach of contract and noting: "Indeed, similar claims could probably be brought in most Carmack

liability on a ground that is separate and distinct from the damage to its [goods], the very authority it cites supports the dismissal of these claims." *Ensign Yachts, Inc v. Arrigoni*, No. 3:09-CV-209 (VLB), 2010 WL 918107, at *5 (D. Conn. Mar. 11, 2010).

Here, Plaintiff's alleged loss of proceeds from the Contract and money spent to replace any damaged or misdelivered mealboxes flow directly from the Defendants' alleged conduct in transporting the goods and the resulting damage to and/or loss of those goods. The Carmack Amendment comprehensively embraces all such losses, resulting from "failure to discharge a carrier's duty as to any part of the agreement transportation." *Shields*, 2021 WL 5832984, at *3 (citations omitted). The negligence claim arises from the same conduct as the claims for delay, loss and/or damage to shipped mealboxes.

Furthermore, numerous district courts have held that state law claims for loss of business damages are barred by the Carmack Amendment. "[W]hether based on contract or tort," these claims are preempted "when they seek damages flowing from shipment agreements." *Consol. Rail Corp. v. Primary Indus. Corp.,* 868 F. Supp. 566, 572 (S.D.N.Y. 1994). *See also, e.g., AIG Aviation, Inc. v. On Time Express, Inc*., No. CIV. 042168 (PHX) (DKD), 2005 WL 2416382, at *3 (D. Ariz. Sept. 30, 2005) ("AIG's claims for loss of use, diminution in value, and consequential damages which may include business interruption, lost profits, or other matters, are not separate and apart from the Carmack damage to goods claim. Carmack has specifically been held to preempt state common law claims which seek loss of business damages.") (citation and internal quotation marks

_____

Amendment cases, which would defeat the Carmack Amendment's purpose of 'establishing a single uniform regime for recovery' and 'provid[ing] interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability.'") (quoting *Project Hope,* 250 F.3d at 73 n.6).

omitted); *Union Pac. R.R. Co. v. Coast Packing Co.*, 236 F. Supp. 2d 1130, 1136 (C.D. Cal. 2002) (The Carmack Amendment "encompasses harms caused by the late arrival of goods, . . . and when a product never arrives because it was shipped to the wrong location.") (citing *Consol. Rail Corp.*, 868 F. Supp. 566).

In *Consolidated Rail Corporation v. Primary Industries Corporation,* shipper Primary Coal contracted with Consolidated Rail Corporation ("Conrail), an interstate railroad carrier, to ship coal from mines located principally in western Pennsylvania to Atlantic Ocean ports. 868 F. Supp. at 569. Following delays in the deliveries, Conrail sued Primary Coal for unpaid shipping charges. Primary Coal counterclaimed, arguing that "any payment should be set off by damages associated with Conrail's rerouting and delays." *Id.* at 571. As described by the court, "Primary Coal's counterclaims assert[ed] that it [was] entitled to damages from Conrail for breaching the shipment contracts, tortiously interfering with Primary Coal's contracts with vessel owners and customers, and tortiously interfering with Primary Coal's prospective economic advantage." *Id.* at 572.

On summary judgment, Conrail argued, *inter alia*, that Primary Coal's counterclaims were preempted by the Carmack Amendment, and the court agreed. In stating its holding, the court explained:

> All three of Primary Coal's counterclaims, whether based on contract or tort, seek damages flowing from shipment agreements with Conrail. The Carmack Amendment governs the parties' rights and liabilities under this situation. Therefore, we hold that Primary Coal's common law claims for breach of contract, tortious interference with contract, and tortious interference with *prospective economic advantage* are preempted.

*Id.* at 574 (emphasis added).

In the instant case, Cariati argues that "[h]ad the goods not been damaged, it is likely the DSNY still would have terminated the Contract with Plaintiff given XPO Freight Lines' repeated

17

and recurrent late deliveries, missed deliveries, wrong deliveries, and other general negligence in loading, packaging, shipping, and delivering the meal boxes as pleaded in the Complaint." Doc. 21, at 10 (citing Doc. 1 (Complaint), ¶¶ 25-28). However, the broad preemptive effect of the Carmack Amendment "includes claims for damages resulting from 'misdelivery' (goods not sent to intended destination), as well as a 'refusal to deliver.'" *RDK NY Inc.*, 2023 WL 348467, at *3 (citing *Ash v. Artpack Int'l, Inc.,* No. 96-CV-8440, 1998 WL 132932, at *1, 4 (S.D.N.Y. Mar. 23, 1998) and *Hall v. N. Am. Van Lines, Inc.,* 476 F.3d 683, 688 (9th Cir. 2007), respectively). "The primary purpose of the Carmack Amendment was to codify a uniform system of carrier liability that would provide certainty to both the shipper and the carrier." *Consol. Rail Corp.,* 868 F. Supp. at 574 (citing *Adams Express*, 226 U.S. at 506). Given the Amendment's scope – as interpreted repeatedly by the Second Circuit to fully occupy the field to the exclusion of state law – this Court concludes that the Carmack Amendment preempts Plaintiff's negligence claims for lost profits and mealbox replacement costs against XPO Freight and Solvoj.

### 4. *Negligence Claim Against Other Defendants*

Finally, where a claim is barred as a matter of federal law, and other defendants are similarly situated to those who have moved to dismiss that same claim against them, a court may dismiss the claim against the non-moving defendants *sua sponte* provided that the plaintiff has had an opportunity to be heard on the matter. *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 288 n.4 (S.D.N.Y. 2000), *aff'd,* 2 F. App'x 109 (2d Cir. 2001); *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.6 (2d Cir.1990). Cariati's negligence claims against VZ United and KB Xpress are identical to those asserted against XPO Freight and Solvoj. Moreover, Plaintiff has had the opportunity to fully defend – *i.e.,* to refute the arguments in the

18

pending motions to dismiss that the negligence claims are preempted as a matter of law.

Accordingly, pursuant to its inherent power, the Court will dismiss the Plaintiff's negligence claim as to all defendants. *See, e.g., Hecht,* 897 F.2d at 26 n.6  ("*Sua sponte* dismissal of the complaint with respect to Stephens is appropriate here, because the issues concerning Stephens are substantially the same as those concerning the other defendants, and Hecht, the party against whom the judgment of dismissal was entered, had notice and a full opportunity to make out his claim against Stephens."); *Wachtler v. Cnty. of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994) ("'The district court has the power to dismiss a complaint *sua sponte* for failure to state a claim,' *Leonhard v. United States,* 633 F.2d 599, 609 n.11 (2d Cir.1980), *cert. denied*, 451 U.S. 908 (1981), so long as the plaintiff is given notice and 'an opportunity to be heard[,]' *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir.1991) (*per curiam*)) (lateral citations omitted); *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F.Supp.2d 133, 146 (S.D.N.Y.2000) ("[T]he Court has discretion to dismiss claims *sua sponte* pursuant to Rule 12(b)(6), particularly where it is clear that a plaintiff could not have prevailed on the facts as alleged in the complaint.").  *See also Perez v. Ortiz*, 849 F.2d 793, 797 (2d Cir.1988) (discussing general appropriateness of *sua sponte* dismissals); 5B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1357 ("Motions to Dismiss – Practice Under Rule 12(b)(6)") (3d ed. 2016) ("[I]f a party does not make a formal motion under Rule 12(b)(6), the district judge on his or her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair to the parties.").

Pursuant to Count Two of the Complaint, Cariati may still recover under the Carmack Amendment, the "federal remedy for loss or damage to goods provided to carriers for interstate shipment." *RDK NY Inc.*, 2023 WL 348467, at *2 (citing 49 U.S.C. § 14706).  Plaintiff will be left

to its proof at trial.[8]

### III.  CONCLUSION

Because Plaintiff Cariati's negligence claims against Defendants XPO Freight and Solvoj are preempted by the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. §14706, the motions to dismiss these claims [Doc. 12, 22] are hereby GRANTED.  Furthermore, the Court *sua sponte* DISMISSES Cariati's negligence claims against the other two Defendants in this action, VZ United, Inc. and KB Xpress Corp, as well. The negligence claim in Count One is identical as to each Defendant in that it has been explicitly brought "Against All Defendants."  Doc. 1, ¶¶ 36-43. Furthermore, Plaintiff has fully argued its opposing position regarding preemption of its negligence claim  in the briefs filed with this Court.  Doc. 21, 28.  Accordingly, Cariati's negligence claim, set forth in Count One of the Complaint, is hereby DISMISSED in its entirety as to all Defendants.

It is So ORDERED.

Signed: New Haven, Connecticut
            July 5, 2023

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

[8] "To make a prima facie case under the Carmack Amendment, a plaintiff must show 1) delivery to the carrier in good condition; 2) arrival in damaged condition; and 3) the amount of damages caused by the loss." *Project Hope*, 250 F.3d 73 n.6 (quoting *Camar Corp. v. Preston Trucking Co.*, 221 F.3d 271, 274 (1st Cir. 2000)). "Once the prima facie case is established, '[l]iability attaches unless the carrier can establish one of several affirmative defenses; for example, by showing that the damage was the fault of the shipper or caused by an Act of God.'" *Id.* (quoting *Windows, Inc. v. Jordan Panel Sys. Corp.*, 177 F.3d 114, 118 (2d Cir.1999)).