UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARIATI DEVELOPERS, INC., )<br>    *Plaintiff*, )<br> )<br>v. )<br> )<br>XPO LOGISTICS FREIGHT, INC., ET )<br>AL., )<br>    *Defendants*. | 3:22-CV-00383 (SVN)<br><br><br><br><br><br>January 9, 2025 |

## RULING AND ORDER ON DEFENDANT VZ UNITED'S MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

Plaintiff Cariati Developers, Inc. alleges that Defendant VZ United, Inc. ("VZ United"), a motor carrier, is liable under the Carmack Amendment, 49 U.S.C. § 14706, for damage to goods VZ United was contracted to deliver on Plaintiff's behalf.[1]  VZ United seeks summary judgment, contending that, based on the undisputed material facts, Plaintiff cannot establish the elements of a *prima facie* Carmack Amendment claim—specifically, that the goods were tendered to it in good condition, that those goods arrived at their destination in a damaged condition, and that Plaintiff suffered a specific amount of damages.  Plaintiff opposes the motion, arguing that there are genuine disputes of material fact on these issues.  For the reasons set forth below, VZ United's motion is DENIED.

I.   **FACTUAL BACKGROUND**[2]

During the COVID-19 pandemic, the City of New York administered the Emergency Adult Food Access Program, a program designed to provide food to food insecure residents of the city.

---

[1] Plaintiff also originally sued other motor carriers, who have since been dismissed from the action.  In addition to VZ United, KB Xpress, Corp., also remains as a defendant.

[2] The factual background is taken primarily from Plaintiff's Local Rule 56(a)(2) Statement, ECF No. 92-1 ("Pl.'s L.R. 56(a)(2) St.").  The facts are undisputed, unless otherwise indicated.

Compl., ECF No. 1 at ¶¶ 13–14; *see* Pl.'s L.R. 56(a)(2) St. ¶ 1. Plaintiff contracted with the City of New York to provide meal boxes as part of this program. Pl.'s L.R. 56(a)(2) St. ¶ 1. Plaintiff also contracted with On the Marc, Inc. ("OTM") and David Alan Hospitality Group ("DAHG") to package the meal boxes and prepare them for transportation, which included determining the suitability of the boxes to withstand the ordinary rigors of ground transportation; determining the number of boxes to be placed on each pallet for shipment; and palletizing the boxes. *Id.* ¶¶ 2–3.

For delivery of the meal boxes, Plaintiff subcontracted with XPO Logistics, LLC, ("XPO Logistics") which, in turn, contracted with motor carriers, including VZ United. *Id.* ¶¶ 4–5. VZ United transported meal boxes from DAHG's facility in Berlin, Connecticut, to various locations in New York City. *Id.* ¶ 7. The meal boxes were placed on pallets and shrink wrapped prior to being loaded on VZ United's truck; VZ United did not place the meal boxes onto the pallets and did not shrink wrap the boxes on the pallets. *Id.* ¶ 8.

The parties generally agree that there were problems with the way in which the meal boxes were packaged and palletized by OTM and DAHG because the boxes on the bottom of the stack of meal boxes were crushed by the weight of the boxes placed on top. *Id.* ¶ 9. Plaintiff further asserts that the boxes would also shift and tilt over in transit, resulting in their being crushed. *Id.* Indeed, there is a pending Connecticut Superior Court case, *Cariati Developers, Inc. v. XPO Logistics, LLC*, NNH-cv-20-6108371-S (Conn. Super. Ct. Oct. 9, 2020), in which Plaintiff alleges that OTM and DAHG failed to properly create, package, and load the meal boxes. *Id.* ¶ 11.

VZ United contends that the shipper, rather than its drivers, would load the trucks, and that, once loaded, the shipper would secure the load within the truck. *Id.* ¶ 12. Plaintiff, for its part, argues that, once loaded, the shipper *and* VZ United's driver would secure the load within the truck. *Id.* VZ United also contends that Plaintiff's corporate representative did not know who

loaded VZ United's trucks or who had knowledge about the condition of the meal boxes when they were tendered to VZ United, but Plaintiff argues that it was routine for VZ United drivers to take photographs of the load before leaving, as evidence of the condition of the boxes. *Id.* ¶ 13; Pl.'s L.R. 56(a)(2) St. Add. Mat. Facts ¶ 34.

Ultimately, two of VZ United's meal box deliveries were rejected by the City of New York: (1) a delivery made on April 13, 2020, pursuant to bill of lading number 8675971 and (2) a delivery made on April 28, 2020, pursuant to bill of lading number 8717716. Pl.'s L.R. 56(a)(2) St. ¶ 14.

Plaintiff contends that the April 13 delivery was rejected by the City of New York because the meal boxes were damaged in transit due to the failure to appropriately secure the load and pallet jack. *Id.* ¶ 15. Plaintiff submitted a claims form for damages regarding the April 13 delivery. *Id.* ¶ 16. The claims form requests $5,870.00 for 200 "[d]amaged food in pantry bags," at a rate of $29.35 per bag. *Id.* ¶ 17. VZ United argues that Plaintiff's corporate representative does not know how Plaintiff determined the $29.35 per bag rate, but Plaintiff contends that this rate was the contracted rate paid by the City of New York. *Id.* The claims form also makes a claim for $150.00 for "Disposal," though Plaintiff's corporate representative does not know what was disposed, *id.* ¶ 18; for $266.00 for 190 boxes at $1.40 per box, though Plaintiff's representative does not know the source of those figures, i*d.* ¶ 19; and for $2,047.50 for "After hrs manpower," though Plaintiff's representative could not identify what after-hours work was performed regarding this claim. *Id.* ¶ 20.

The parties agree a shipment log notes that the April 28 delivery was rejected by the City of New York because one pallet was leaning and one box on the bottom of a box stack was crushed. *Id.* ¶ 23. VZ United asserts, however, that there is no basis to infer from this description of the items that they were actually damaged, while Plaintiff contends the cargo was damaged because

3

items were not properly secured in the truck.  *Id.* ¶¶ 23, 24.  Plaintiff contends that a claim was filed for this delivery; the records Plaintiff cites in support include an email chain with photographs of boxes, but do not include a formal claim form for the April 28 delivery.  *Id.* ¶ 24.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A disputed fact is material only where the determination of the fact might "affect the outcome of the [law]suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial.  It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'"  *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at

4

324).  The non-moving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  *Anderson*, 477 U.S. at 249.  If the non-movant fails "to make a sufficient showing on an essential element of [their] case with respect to which [they have] the burden of proof," then the movant will be entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

### III.  DISCUSSION

For the reasons discussed below, VZ United's motion is DENIED.

The Carmack Amendment is a federal law that allows for interstate shippers of goods to recover directly from an interstate carrier in whose care their items were damaged.  49 U.S.C. § 14706; *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir. 1994).  In order to demonstrate a *prima facie* case under the Carmack Amendment, a plaintiff must show:  (1) delivery of the goods to the carrier in good condition; (2) arrival in damaged condition; and (3) the amount of damages caused by the loss.  *Missouri Pac. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964); *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 73 n.6 (2d Cir. 2001); *Design X Mfg., Inc. v. ABF Freight Sys., Inc.*, 584 F. Supp. 2d 464, 468 (D. Conn. 2008).[3]

---

[3] Once a plaintiff establishes a *prima facie* case, liability attaches unless the carrier can establish one of the following affirmative defenses:  acts of God, the public enemy, the act of the shipper himself, public authority, or the inherent vice or nature of the goods.  *See Missouri Pac. R. Co.*, 377 U.S. at 137; *Project Hope*, 250 F.3d at 73 n.6.

5

The Court concludes that there is an issue of material fact as to each element, as there is sufficient evidence for a reasonable trier of fact to conclude that VZ United received goods in good condition, that those goods arrived in damaged condition, and that there are damages caused by the loss. Accordingly, VZ United is not entitled to summary judgment as a matter of law.

A. Receipt of Goods in Good Condition

First, there is a disputed question of material fact as to whether VZ United received goods for shipment in good condition. According to Angel Trposki, VZ United's Rule 30(b)(6) corporate representative, VZ United's drivers would not leave with the load unless the load was in good condition, and VZ United drivers routinely took pictures before leaving to verify the condition of the boxes to be shipped. Pl.'s L.R. 56(a)(2) St. Add. Mat. Facts ¶¶ 33–34. Plaintiff has supplied four photographs showing stacked and wrapped boxes on pallets in trucks that Plaintiff asserts demonstrate the goods were provided to VZ United in good condition. *Id.* ¶¶ 35–36; Cara Aff., Ex. C, ECF No. 92-2 at 45–48. The photographs show boxes wrapped in shrink wrap on pallets; while VZ 109 and 111 appear to show boxes in good condition, VZ 108 depicts two pallets of boxes, one of which is tilting, and VZ 110 depicts boxes that are bent in some respects.

Based on the photographs in VZ 109 and VZ 111 and Trposki's testimony regarding VZ United's general practices for each load, a reasonable trier of fact could conclude that the cargo was delivered to VZ United in good condition. *See* Trposki Dep, ECF No. 92-2 at 12, 18–20. Drawing all reasonable inferences in Plaintiff's favor at this stage, the Court finds that a reasonable jury could conclude that a VZ United driver would not have departed with a load unless the load was in good condition. The photographs in VZ 109 and 111 could further support a conclusion

that the loads in question were in good condition before they were transported by VZ United. *See* Cara Aff., Ex. C, at 45–48.[4]

VZ United's counterarguments are to no avail. First, VZ United's argument that a clean bill of lading meets the first element of a *prima facie* Carmack Amendment claim only if the carrier has the opportunity to inspect the goods is misplaced. *See* Def.'s Br., ECF No. 88-1, at 6–7. Plaintiff does not rely on any presumption created by a clean bill of lading in its briefing; instead, it points to evidence in the record, specifically the photographs and testimony regarding the typical practice of taking photographs and not leaving unless the goods were in good condition. Based on this evidence, VZ United is not entitled to summary judgment.[5] Similarly, VZ United's argument that Plaintiff's corporate representative did not know who would have knowledge of the condition of the meal boxes for the two loads at issue at the time they were tendered is again not responsive to the evidence Plaintiff has identified that creates questions of material fact. *Id.*

Finally, to the extent that VZ United's briefing can be construed to argue that it should generally be absolved of liability because it was prevented from independently inspecting the cargo, Trposki's testimony indicated that it was standard practice for VZ United drivers to take photographs of the load before leaving, indicating at least some level of access to the load. Trposki Dep., ECF No. 92-2 at 19. Moreover, Trposki testified that the VZ United drivers and the shipper

---

[4] VZ United, which did not file a reply brief in support of its motion for summary judgment, does not specifically dispute that the photographs at VZ 109 and VZ 111 are of the two shipments at issue in this case, although the photographs themselves do not bear the date on which they were taken. Plaintiff represents that these photographs were produced by VZ United in discovery. Cara Aff., ¶ 5.

[5] Moreover, the case VZ United relies on for its arguments regarding the clean bill of lading, *Bally, Inc. v. M.V. Zim Am.*, 22 F.3d 65, 69 (2d Cir. 1994), is a case applying the Carriage of Goods by Sea Act, not the Carmack Amendment, *see* Def.'s Br. at 6. And *Bally* itself states that a clean bill of lading does not constitute *prima facie* evidence of the conditions of goods, if those goods are "shipped in sealed packages where the carrier is prevented from 'observing the damaged condition had it existed when the goods were loaded.'" 22 F.3d at 69 (quoting *Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 352 (2d Cir. 1981)). Here, Plaintiff contends that the damage to the exterior of the boxes would have been visible upon loading.

*both* had responsibility to put straps across the load to secure the load, suggesting VZ United has a role in ensuring the cargo is properly secured. *Id.* at 17.

There is therefore a genuine dispute of material fact as to the first element of a *prima facie* Carmack Amendment claim.

B.  Arrival of Goods in Damaged Condition

There is also a disputed question of material fact whether the goods arrived in a damaged condition, as evidenced throughout the record.

As to the April 13, 2020, shipment, Plaintiff's damage claim form submitted to XPO Logistics represents that this load was damaged upon arrival and rejected by the City of New York. Cara Aff., Ex. D, ECF No. 92-2 at 70. Moreover, a letter from the City of New York to Plaintiff explains that the April 13, 2020, shipment was rejected, in part because "due to [the meal box's] sloppy and irregular packaging, [the meal boxes] had tipped over and were falling apart." Cara. Aff., Ex. H, ECF No. 92-2 at 253–54. Although this letter also identifies other grounds for rejection of this load, it at least creates an issue of material fact about whether the load arrived in damaged condition.

As to the April 28, 2020, delivery, there is also support in the record for the proposition that this load arrived in damaged condition. VZ United admits the evidence shows one pallet was leaning and at least one box on the bottom of a pallet was crushed, but then baldly asserts that this is insufficient to establish that cargo was damaged. Def.'s Br. at 8. A reasonable trier of fact could disagree. Indeed, the photographs of this shipment at arrival show one stack of meal boxes leaning significantly from a vertical position and shows significant distortions in no fewer than three boxes. *See* Cara Aff., Ex. B, ECF No. 92-2 at 38–39 (photographs and emails relating to April 28 shipment). Trposki recalls for this shipment that "[t]he boxes were getting crushed on the bottom."

Trposki Dep., at 17. Additionally, a letter from the City of New York represents that, on April 28, 2020, 1,296 products were "crushed and unusable," and that another 1,296 products were "similarly damaged." Cara Aff., Ex. H., at 255. VZ United provides no support for its assertion that Plaintiff's failure to submit a formal claims form regarding the April 28 shipment gives rise to an inference that the cargo was delivered in good condition. In any event, whatever inference may apply initially, the record contains enough evidence to create a disputed issue of material fact as to the arrival of the goods in damaged condition such that VZ United is not entitled to summary judgment.

    C. Damages

Finally, there is at least a question of material fact as to damages such that VZ United is not entitled to summary judgment. VZ United's argument as to the damages prong—that Plaintiff cannot establish the *amount* of damages it incurred—misses the mark. VZ United attempts to argue that a "degree of reasonable certainty" as to the amount of damages is necessary to establish a *prima facie* claim under the Carmack Amendment, Def.'s Br. at 5. But it misunderstands the only case upon which it relies for this proposition. The case Defendant cites—*Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151 (2d Cir. 1999)—is concerned with the award of damages in the default judgment context. There, the Second Circuit reasoned that even when a party fails to defend a case and is liable for a default judgment, the allegations in the complaint regarding damages are not automatically deemed true. *Id.* at 155. Instead, the district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* In other words, *Credit Lyonnais* says nothing about the degree of precision with which damages must be claimed in order to survive a motion for summary judgment.

Additionally, VZ United inappropriately relies upon a portion of testimony from Plaintiff's Rule 30(b)(6) witness as its evidence that Plaintiff lacks certainty as to the amount of damages it seeks. While this testimony is of a 30(b)(6) witness, the context of the answers VZ United quotes reveals that the witness was being asked about his personal capability to calculate damages, which he testified he did not possess because he did not personally deal with financial aspects of the business. Masse Dep., ECF No. 88-3 at 26–27.

Portions of the record show that there is at least a question of material fact as to the amount of damages. For example, Plaintiff has provided a claim form regarding April 13, 2020, shipment, claiming damages related to VZ United's transportation of that shipment. Cara Aff., Ex. D, at 70. The parties disagree over the exact amount of damages Plaintiff may recover, in part, because the parties disagree on how Plaintiff calculated the values claimed. But the amount of damages and, incidentally the method by which they are calculated, involve disputed questions of material fact, particularly in light of Plaintiff's contention that its damages calculation is based in part on the contracted rate paid by the City of New York per box. *See* Cara Aff., Ex. E, at 81. It is insufficient for Defendant to disagree about the precise damages amount and then claim that it is entitled to summary judgment as a matter of law. *See Project Hope v. M/V IBN SINA*, 96 F. Supp. 2d 285, 293 (S.D.N.Y. 2000) (finding that Plaintiff established a *prima facie* case as to damages element of a Carmack Amendment claim even though Defendants "[took] issue with the actual amount of the loss"), *aff'd in part, vacated on other grounds*, 250 F.3d 67 (2d Cir. 2001). Indeed, the precise amount of the damages need not be cemented at this juncture in order for the claim to proceed, as such inquiry is distinct from the liability inquiry. *See AIG Eur. (Netherlands), N.V. v. UPS Supply Chain Sols., Inc.*, 765 F. Supp. 2d 472, 482 (S.D.N.Y. 2011) (quoting *St. Paul Fire & Marine Ins. Co. v. Schneider Nat'l Carriers, Inc.*, No. 03 CIV 5197 RMB/GWG, 2006 WL 522455, at *7

(S.D.N.Y. Mar. 3, 2006) ("After 'liability under the Carmack Amendment has . . . been established, [t]he inquiry then becomes the amount of damages . . . .'")).

To be sure, if VZ United is found liable at trial, there will be questions for the trier of fact as to the exact amount of damages that Plaintiff may recover. But in ruling on VZ United's motion for summary judgment as to the Carmack Amendment's third prong, it is sufficient for this Court to find that Plaintiff has shown that it has incurred some damages by its goods being damaged in transit, such that VZ United is not entitled to summary judgment as a matter of law.

In sum, viewing the record in the light most favorable to Plaintiff, as the Court must at this stage, the Court concludes that VZ United is not entitled to summary judgment.

### IV. CONCLUSION

For the reasons described herein, VZ United's motion for summary judgment is DENIED.

**SO ORDERED** at Hartford, Connecticut, this 9th day of January, 2025.

                                                                        /s/ Sarala V. Nagala
                                                                       SARALA V. NAGALA
                                                                       UNITED STATES DISTRICT JUDGE